IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS

| | |
|---|---|
| GARDNER DENVER PETROLEUM PUMPS, LLC | ) ) ) |
| Plaintiff, | ) Case No. 6:21-cv-864 ) |
| v. | ) **COMPLAINT** ) |
| PREMIUM OILFIELD TECHNOLOGIES LLC | ) **DEMAND FOR JURY TRIAL** ) |
| Defendant. | ) ) ) ) |

**COMPLAINT**

Plaintiff, Gardner Denver Petroleum Pumps, LLC ("Plaintiff" or "GDPP"), by its attorneys, brings this action for damages and injunctive relief against Premium Oilfield Technologies, LLC ("Defendants" or "Premium") for willful patent infringement, and alleges as follows:

**I.
NATURE OF THE ACTION**

1. This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 1, *et seq*.

**II.
PARTIES**

2. Plaintiff GDPP is an Oklahoma corporation with its principal place of business located at 4747 South 83rd East Ave, Tulsa, Oklahoma, 74145.

3. Defendant Premium is a Delaware corporation with a principle place of business located at 5727 Brittmoore Rd, Houston, Texas, 77041.

4. In addition to having its principal place of business in Houston, Premium maintains three Field Sales Offices in this judicial district, in: (i) Odessa, with an address of 4403 SCR 1290,

Odessa, Texas, 79765; (ii) Helotes, with an address of 11626 Rainbow Ridge, Unit 101, Helotes, Texas, 78023; and (iii) Seguin, with an address of 115 E. New Braunfels, Street, Seguin, Texas, 78155.  Premium also maintains a Global Drilling Support location in this judicial district at 320 West Hillmont Road, Odessa, Texas, 79764.  *See*, *e.g.*, https://www.premiumoilfield.com/contact.

### III.
### JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over GDPP's patent infringement claims pursuant to 28 U.S.C. §§ 1331 and 1338(a), because they arise under the laws of the United States, specifically those related to the infringement of U.S. Patents, 35 U.S.C. § 1, *et seq*.

6. Premium is subject to this Court's specific personal jurisdiction, at least because it markets, distributes, offers for sale, and/or sells infringing products throughout the United States from this judicial district.  This Court further has specific personal jurisdiction over Defendant, because, as described below, it purposefully avails itself, and enjoys the benefits, of the laws of Texas, it has sufficient minimum contacts with the State of Texas and this District, this action arises out of these contacts, and exercising jurisdiction over Defendant would be reasonable and comport with the requirements of due process.

7. Premium markets, distributes, offers for sale, and/or sells the infringing products identified below through its sales offices in this judicial district.  *See*, *e.g.*, **Exhibit B**, p. 12, directing customers to Premium sales offices in Texas.

8. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 and 28 U.S.C. § 1400(b) at least because Premium has committed acts of infringement and has regular and established places of business in this district.

## IV.
## FACTUAL BACKGROUND

9. GDPP's history spans over 150 years, from when Robert Gardner developed a revolutionary compressor and founded Gardner Denver. Over the years, GDPP has developed into a world leader in pumping technology and services. GDPP designs, makes, and sells a variety of pump systems and parts (*see*, *e.g.*, https://www.pumpingperfected.com/products) and provides related services (*see*, *e.g.*, https://www.pumpingperfected.com/services).

10. GDPP's competitiveness depends in large part on its research and development activities, which allows it to successfully develop and launch new products while reducing its costs. GDPP protects its research and development investments by, among other things, filing patent applications from which GDPP has been rewarded with patents held around the world.

11. One of GDPP's patents, U.S. Patent No. 9,732,746 (the "'746 Patent"), is directed to important features of the fluid end of a high pressure plunger pump. A copy of the '746 Patent is attached hereto as **Exhibit A**.

12. The '746 Patent, entitled "Fluid End of a High Pressure Plunger Pump," was duly and legally issued by the United States Patent Office on August 15, 2017 from an application filed on May 16, 2016, naming Arun Nahendra Raj Chandrasekaran, Christopher Douglas Degginger, and Gregory David Hash as inventors.

13. The '746 Patent is a continuation of U.S. Application 13/773,271, which was filed on February 21, 2013, which is a continuation-in-part of U.S. Application 13/646,170, which was filed on October 5, 2012, and claims priority to U.S. Provisional Application 61/704,905, filed September 24, 2012.

14. GDPP holds, by assignment, all right, title, and interest in and to the '746 Patent.

15. Pursuant to 35 U.S.C. § 282, the '746 Patent is presumed valid.

16.     The '746 Patent generally relates to an improved fluid end design. In an exemplary embodiment described in the '746 Patent, a fluid end of a pump includes four bores (inlet, outlet, plunger, and valve cover bores) that define a cross bore intersection space, and has an inlet bore transition area at the intersection of the inlet bore and the cross bore intersection space. V-shaped grooves are provided around opposing parts of the transition area. An inlet spring retainer that retains a valve in the inlet bore may be positioned in a first orientation during installation, removal, or maintenance, such that it does not interface with the grooves. The inlet spring retainer may also be positioned in a second orientation where it interfaces with the grooves, which prevents it from moving axially and allows it to retain the inlet spring and allow the inlet valve to operate.



17.     The arrangement and groove configuration of the '746 Patent represents a significant improvement over prior art retainer designs that imparted stress into the structure of the fluid end resulting in systemic failures.

18.     For example, claim 5 of the '746 Patent reads as follows:

5. A fluid end of a plunger pump comprising:

a casing defining at least one working space, the at least one working space comprising:

an inlet bore centered on an inlet bore axis;

an outlet bore centered on an outlet bore axis that is coaxial with the inlet bore axis;

a plunger bore centered on a plunger axis, the plunger axis arranged perpendicular to the inlet bore axis;

a valve cover bore centered on the plunger axis,

the inlet bore, the outlet bore, the plunger bore, and the valve cover bore cooperating to define a cross bore intersection space, wherein the casing defines an inlet bore transition area at the intersection of the inlet bore and the cross bore intersection space;

a first V-shaped groove formed adjacent the inlet bore transition area and extending partially around the inlet bore axis;

a second V-shaped groove formed adjacent the inlet bore transition area and extending partially around the inlet bore axis,

the first V-shaped groove and the first V-shaped groove and the second V-shaped groove each comprise an upper surface and a lower surface that intersect at a fillet, the upper surface and the lower surface of the first V-shaped groove and the second V-shaped groove defining an exterior angle between 180 degrees and 270 degrees; and

an inlet spring retainer including a first engagement portion and a second engagement portion, the inlet spring retainer orientable in a first orientation in which the inlet spring retainer is movable from the inlet bore to the plunger bore and a second orientation in which the inlet spring retainer engages the first V-shaped groove and the second V-shaped groove to inhibit movement of the inlet spring retainer from the inlet bore to the cross bore intersection space.

19. The claimed fluid end provided a novel and unobvious solution at the time of the invention of the '746 Patent.

20. The '746 Patent is practiced by GDPP including by, for example, GDPP's 7500 HD Fluid End, pictured below.



*See* https://assets.ellcdn.com/ell-boilerplate/media/siteImages/123230-gd_cutsheet_drilling-module_7500-2017_hr.pdf.

21. Pursuant to 35 U.S.C. § 287, GDPP has continuously marked its 7500 HD Fluid End products with the '746 Patent since the introduction of the 7500 HD Fluid End product in July 2018.

22. On information and belief, Premium has been in business since 2013.

23. On information and belief, Premium's business model revolves around copying and selling replaceable portions of various manufacturers' pump systems and parts.  For example, Premium has copied and now offers for sale replacement versions of GDPP's high pressure fluid end modules, as shown below, indicating them to be "Gardner Denver Compatible."



see https://www.premiumoilfield.com/mud-handling/fluid-end-modules.html

24. Premium provides literature describing its products, including the "Caliber GHD-7500" fluid end module brochure (**Exhibit B**) and available at: (https://www.premiumoilfield.com/literature).

V.
COUNTS

A. Count I - Infringement of U.S. Patent No. 9,732,746 (the '746 Patent)

25. GDPP realleges and incorporates by reference the allegations of paragraphs 1 through 25 set forth above.

26. Premium directly infringes the '746 Patent under 35 U.S.C. § 271(a) by making, using, offering to sell, and/or selling in the United States its "Caliber GHD-7500" fluid end module, along with related products (collectively the "Accused Products"), which utilize the inventions disclosed and claimed in the '746 Patent.

27. As a non-limiting example, Premium directly infringes at least independent claim 5 of the '746 Patent in at least the following manner.

28. The Caliber GHD-7500 fluid end module is a "fluid end of a plunger pump comprising: a casing defining at least one working space, the at least one working space comprising: an inlet bore centered on an inlet bore axis; an outlet bore centered on an outlet bore axis that is coaxial with the inlet bore axis; a plunger bore centered on a plunger axis, the plunger axis arranged perpendicular to the inlet bore axis; a valve cover bore centered on the plunger axis, the inlet bore, the outlet bore, the plunger bore, and the valve cover bore cooperating to define a cross bore intersection space, wherein the casing defines an inlet bore transition area at the intersection of the inlet bore and the cross bore intersection space;" as shown in the depiction of the Caliber GHD-7500 fluid end module taken from p. 1 of **Exhibit B** reproduced below with annotations added:



29. The casing of the Caliber GHD-7500 fluid end module includes "a first V-shaped groove formed adjacent the inlet bore transition area and extending partially around the inlet bore axis; a second V-shaped groove formed adjacent the inlet bore transition area and extending partially around the inlet bore axis, []the first V-shaped groove and the second V-shaped groove each comprise an upper surface and a lower surface that intersect at a fillet, the upper surface and the lower surface of the first V-shaped groove and the second V-shaped groove defining an exterior angle between 180 degrees and 270 degrees" as shown in the depictions of the Caliber GHD-7500 fluid end module taken from pp. 2 and 6 of **Exhibit B** reproduced below with annotations added:



30. The casing of the Caliber GHD-7500 fluid end module includes "an inlet spring retainer including a first engagement portion and a second engagement portion, the inlet spring retainer orientable in a first orientation in which the inlet spring retainer is movable from the inlet bore to the plunger bore and a second orientation in which the inlet spring retainer engages the first V-shaped groove and the second V-shaped groove to inhibit movement of the inlet spring retainer from the inlet bore to the cross bore intersection space" as shown in the depictions of the Caliber GHD-7500 fluid end module taken from pp. 2 and 4 of **Exhibit B** reproduced below with annotations added:



31.     Premium has infringed, and continues to infringe, at least claim 5 of the '746 Patent in violation of 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, by making, using, selling, and/or offering for sale in the United States, and/or importing into the United States, the Accused Products that are covered by one or more claims of the '746 Patent.

32.     On information and belief, Premium has been and is inducing infringement of the '746 Patent in violation of 35 U.S.C. § 271(b), at least by actively and knowingly inducing its customers to, literally or under the doctrine of equivalents, make and use in the United States the Accused Products which utilize the inventions as defined by one or more claims of the '746 Patent. Specifically, Premium intends that its customers directly infringe the '746 Patent through, for example, their onsite testing, use, quality assurance, and maintenance of the Accused Products in view of Premium's technical support and instructions. Premium has known and knows that its customers' making and use of the Accused Products constitutes infringement of at least independent claim 5 of the '746 Patent for the same reasons set forth hereinabove.

33. On information and belief, Premium has been and is continuing to contributorily infringe the '746 Patent in violation of 35 U.S.C. § 271(c), at least by selling and/or offering to sell inlet spring retainers (see pp. 4-5 of **Exhibit B**), knowing that such retainers are especially made or adapted for practicing one or more claims of the '746 Patent and that they are not a staple article or commodity of commerce suitable for substantial, non-infringing use. Specifically, Premium has known and knows that its inlet spring retainer is especially made or adapted to be used with the Accused Products, and that after installation, use of the Accused Products by Premium's customers constitutes direct infringement of at least independent claim 5 of the '746 Patent for the same reasons as set forth hereinabove. Moreover, Premium has known and knows that there is no substantial, non-infringing use for its inlet spring retainer because it is only compatible with the Accused Products.

34. GDPP has continuously marked its products with the '746 Patent pursuant to 35 U.S.C. §287 since those products were first introduced to the market in 2018.

35. Premium has actual and constructive notice of the '746 Patent based at least in part on GDPP's marking of its products with the '746 Patent.

36. On information and belief, Premium has had knowledge of the '746 Patent and GDPP's products, and yet intentionally copied GDPP's 7500 HD Fluid End product and has continued its infringement with disregard of the '746 Patent.

37. Premium's infringement of the '746 patent is willful, deliberate, and intentional, and Premium is acting in reckless disregard of GDPP's patent rights.

38. Because of Premium's infringement of the '746 Patent, GDPP has suffered and will continue to suffer irreparable harm and injury, including monetary damages in an amount to be determined at trial.

39. Unless enjoined, Premium, and/or others acting on behalf of Premium, will continue their infringing acts, thereby causing additional irreparable injury to GDPP for which there is no adequate remedy at law.

40. Premium's actions render this an exceptional case and entitles GDPP to attorneys' fees and costs under 35 U.S.C. § 285.

## VI.
## PRAYER FOR RELIEF

WHEREFORE, Plaintiff GDPP respectfully prays for relief, as follows:

1) A judgment that Premium has directly and willfully infringed, actively induced infringement of, and/or contributorily infringed one or more claims of the '746 Patent in violation of 35 U.S.C. § 271(a), (b), and/or (c);

2) An order and judgment preliminarily and permanently enjoining Premium, its employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries and assigns, and all of those in active concert and participation with any of the foregoing persons or entities from further acts of infringement of the '746 Patent;

3) A judgment awarding GDPP damages in an amount sufficient to compensate for Premium's infringement of the '746 Patent, and in no event less than a reasonable royalty for Premium's acts of infringement, including all pre-judgment and post-judgment interest at the maximum rate permitted by law, plus costs, and all other damages permitted under 35 U. S. C. § 284;

4) A judgment that Premium's infringement of the '746 Patent has been willful and deliberate;

5) A judgment awarding Plaintiff treble damages as a result of Premium's willful and deliberate infringement of the '746 Patent, pursuant to 35 U.S.C. § 284;

6) A judgment declaring this case is exceptional under 35 U.S.C. § 285 and awarding costs, expenses, and attorneys' fees to GDPP; and

7) Awarding GDPP such other and further relief as the Court deems just and proper.

<u>**DEMAND FOR JURY TRIAL**</u>

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure and Civil L.R. 3-6(a), GDPP demands a trial by jury on all issues raised by the Complaint.

Dated:  August 17, 2021

By: */s/ Jason Mueller*
JASON MUELLER
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
2200 Ross Ave, 20th Floor
Dallas, TX 75201
Telephone: 469.391.7400
Facsimile: 469.391.7401
JMueller@sheppardmullin.com

ROBERT M. MASTERS
TIMOTHY P. CREMEN
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
2099 Pennsylvania Avenue, N.W.
Suite 100
Washington, DC 20006-6801
Telephone: 202.747.1900
Facsimile: 202.747.1901
RMasters@shepparmullin.com
TCremen@sheppardmullin.com

**Attorneys for Plaintiff Gardner Denver Petroleum Pumps, LLC**